IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TRINSIC RESIDENTIAL GROUP LP<br>8235 Douglas Avenue, Suite 950<br>Dallas, TX 75225<br><br>         Plaintiff,<br><br>v.<br><br>EXCELSIOR COMMUNITIES LLC<br>986 Monroe Avenue<br>Rochester, NY 14620<br><br> Serve: Barclay Damon, LLP<br>    2000 Five Star Bank Plaza<br>    100 Chestnut Street<br>    Rochester, NY 14604<br><br>and<br><br>BREWERS HILL REALTY LLC<br>986 Monroe Avenue<br>Rochester, NY 14620<br><br> Serve: Resident Agent<br>    The Corporation Trust Incorporated<br>    2405 York Road<br>    Suite 201<br>    Lutherville Timonium, MD 21093<br><br>         Defendants. | Case No.<br><br>Jury Trial Requested |

## **ORIGINAL COMPLAINT**

Trinsic Residential Group LP ("Trinsic"), by and through its undersigned counsel, alleges the following against Defendants Excelsior Communities LLC ("Excelsior") and Brewers Hill Realty LLC ("Brewers Hill Realty") (collectively, "Defendants"):

9385491_1

## Nature of the Action

1. This is a civil action for trademark and service mark infringement, false association and sponsorship, unfair competition, and misappropriation under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and Maryland common law.

2. Trinsic is a development company that develops and operates luxury multi-family housing complexes under the brand AURA. Since 2013, Trinsic has built nearly 50 AURA-branded properties in seven states and 25 cities across the country under names such as "Aura," "Aura West Seattle," and "Aura Boca." In connection with this nationwide brand, Trinsic will soon build and launch two AURA-branded properties in Maryland, where it also maintains a regional office.

3. Trinsic prominently and consistently uses the AURA mark as a source identifier for its properties, including featuring the AURA mark on large signage in front of and on the side of its buildings as well as in both digital and traditional promotional materials. The AURA mark is widely recognized in the marketplace nationwide for its association with Trinsic's high-end apartment complexes. Trinsic has owned a federal trademark registration for its AURA mark since 2014 (U.S. Reg. No. 4,481,972). The AURA mark attained incontestable status in 2019.

4. Defendants are property management companies that, like Trinsic, develop and operate luxury multi-family housing properties. Like Trinsic, Defendants market their properties nationally to the same consumers and promote each of their properties under a geographical name, such as "Bradford Hill," "Preserve at Wood Creek," and "LaCroix Court."

5. In 2020, Defendants built an apartment complex in Baltimore, Maryland called "Alta Brewers Hill." Despite launching with the "Alta" brand name, on or around December 31, 2021—at least seven years after Trinsic, its direct competitor, secured the exclusive rights to use the AURA mark nationwide—Defendants changed the name of "Alta Brewers Hill" to the

infringing "Aura Brewers Hill." Since then, Defendants have promoted the Brewers Hill property under the AURA brand—despite Trinsic's priority of rights under federal and state law, the strength of Trinsic's distinctive AURA mark, and the broad market awareness of the mark.

6. Defendants neither sought nor received permission or a license from Trinsic to use its registered AURA mark.

7. In April 2022—as soon as Trinsic learned about Defendants' unlawful use of the AURA mark—Trinsic contacted Defendants in writing and demanded that they cease infringing the AURA mark. But Defendants have refused to stop their infringing use of the AURA mark. Instead, they have continued to market the Brewers Hill property under the AURA brand, which is likely to cause marketplace confusion and has damaged the value and goodwill of Trinsic's rights in the AURA mark.

## The Parties

8. Trinsic is a Texas limited partnership with its principal place of business at 8235 Douglas Ave., Suite 950, Dallas, TX 75225.

9. Excelsior is a limited liability company with its principal place of business at 986 Monroe Avenue, Rochester, NY 14620.

10. Brewers Hill Realty is a limited liability company with its principal place of business at 986 Monroe Avenue, Rochester, NY 14620.

## Jurisdiction and Venue

11. This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b). The Court has supplemental jurisdiction over Trinsic's state-law claims under 28 U.S.C. § 1367(a) because they are substantially related to its federal claims and arise out of the same case or controversy.

12. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) because Defendants regularly conduct business in this District and a substantial part of the events giving rise to Trinsic's claims have occurred and are continuing to occur in this District.

## Facts Relevant to the Claims for Relief

**Trinsic and its Incontestable AURA Mark**

13. Trinsic is a national development company that has developed or acquired more than 16,000 housing units with a total capitalization of over $3.4 billion in multi-family real estate.

14. Trinsic develops and operates high-density urban communities and high-end institutional, garden-style properties across the United States under the AURA brand.

15. Since 2013, Trinsic has developed and operated nearly 50 AURA-branded housing complexes in twenty-five cities from coast to coast (including in Virginia, North Carolina, Florida, Texas, Arizona, Colorado, Oregon, and Washington).

16. Trinsic has naturally expanded its use of the AURA brand since its inception and will continue to do so. For example, Trinsic has already agreed to develop two AURA-branded properties in Maryland—one in Prince George's County and another in Towson, which is located approximately 10 miles from Defendants' infringing "Aura Brewers Hill" property.

17. Trinsic prominently and consistently uses the AURA mark as a source identifier of its properties by featuring the AURA mark on large signage in front of and outside of its complexes, as shown below.







5

9385491_1

18. Trinsic also uses its AURA mark to advertise and promote its services through digital advertising, print materials, and other means.

19. Trinsic uses its AURA mark alone and combined with geographic terms, such as "AURA Chapel Hill," "AURA at the Rim," and "Aura 3Sixty," as part of its family of AURA marks. Even when Trinsic uses the AURA mark with another term, AURA is visually prominent, as shown below.





9385491_1

20. Trinsic has spent substantial resources developing and marketing the AURA brand and its properties.

21. Trinsic's AURA properties have received extensive coverage by the media and other third parties, including by not limited to coverage in the *Dallas Morning News*, the *Sun Sentinel*, and the *South Florida Business Journal*.

22. Trinsic routinely monitors use of its AURA mark and actively takes steps to police unauthorized third-party use of its mark.

23. Because of Trinsic's expansive, prominent, and consistent use of the AURA mark across the country, the AURA mark is widely recognized in the marketplace for its association with Trinsic's highly-quality housing complexes and related services.

**Trinsic's Federal Trademark Registration for the AURA Mark**

24. Trinsic owns a federal trademark registration for its AURA mark (U.S. Reg. No. 4,481,972). The registration covers "leasing and management of multi-family housing units" in Class 36 and "development and construction of multi-family housing units" in Class 37. A copy of the trademark registration certificate is attached as Exhibit A.

25. Trinsic filed its U.S. trademark application for AURA on August 29, 2012. The USPTO registered the mark on February 11, 2014. The AURA mark attained incontestable status in 2019.

26. Trinsic's AURA mark is fanciful and inherently distinctive as a source indicator for its services. In short, Trinsic's AURA mark is entitled to the widest scope of protection available under the Lanham Act and related federal, state, and common law.

9385491_1

**Defendants' Infringing and Unlawful Use of the AURA Mark**

27. In 2020, Defendants developed a multi-family housing property called "Alta Brewers Hill" located at 1211 S Eaton Street, Baltimore, MD 21224, as shown below.



28. Despite Trinsic's extensive use of the AURA mark across the country for more than seven years—Defendants announced on December 31, 2021, that they were re-branding the "Alta Brewers Hill" property to the name "Aura Brewers Hill," as shown below.

8

9385491_1



29. Upon information and belief, Defendants have knowingly and willfully attempted to trade on Trinsic's goodwill and business reputation by rebranding to the infringing "Aura Brewers Hill" name. For example, as shown in the image above, Defendants describe the rebranded "Aura Brewers Hill" as an effort to "enhance the living experience for our residence," which is consistent with Trinsic's reputation for offering high-end rental properties with luxury experiences under the AURA brand.

30. Defendants predominately feature the AURA mark on their property, as shown below.



31. Continuing with its efforts to impersonate Trinsic, Defendants actively advertise the "Aura Brewers Hill" property on a website located at aurabrewershill.com (the "Infringing Domain"), which was registered without Defendants' knowledge or permission.

32. Defendants use the infringing "Aura Brewers Hill" name on the website at the Infringing Domain and on third-party websites, as shown below.





10

9385491_1





33. Consumer confusion is likely to occur because, like Trinsic, Defendants offer high-end apartment leases at similar prices through the same channels of trade and market their property to the same types of consumers. In a further effort to deceive consumers and trade on Trinsic's goodwill and reputation, Defendants have adopted the same exact naming convention as Trinsic:

11

Defendants use the AURA brand name followed by a geographic term to name their property. Accordingly, not only are Defendants using the *same exact mark*, they are also using it in the *same exact way* as Trinsic, which will undoubtedly confuse consumers.

34. Given that Trinsic and Defendants are direct competitors, it is impossible to deny that Defendants were familiar with Trinsic's well-known, nationwide AURA properties when they adopted the identical AURA mark for their Brewers Hill property. In addition to this actual knowledge, Defendants had constructive knowledge of Trinsic's rights in the AURA mark based on Trinsic's trademark registration.

35. Despite this knowledge, Defendants adopted the AURA mark for its Brewers Hill property, even though countless alternative names were available. Given the background facts, it is clear that Defendants' adoption of the "Aura Brewers Hill" name and continued promotion of the property under that name have occurred in bad faith and with willful and malicious intent.

## Claims for Relief

### First Claim for Relief:
### Violations of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

36. Trinsic repeats the allegations in paragraphs 1 through 35 above.

37. As detailed above, without Trinsic's consent, Defendants used and continue to use in reproductions, counterfeits, copies, and colorable imitations of Trinsic's registered and incontestable AURA mark in connection with the sale, offering for sale, distribution, or advertising of goods and/or services on or in connection with which such use is likely to cause confusion, and/or to cause mistake, and/or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

38. Defendants' conduct is causing and will continue to cause immediate and irreparable injury to Trinsic and Trinsic's goodwill and reputation, and such conduct will continue to damage Trinsic and deceive the public unless enjoined by the Court.

39. Because of the above, Trinsic has suffered and will continue to suffer substantial damages, and Defendants have reaped substantial unlawful revenues and profits.

## Second Claim for Relief:
### Violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

40. Trinsic repeats the allegations in paragraphs 1 through 39 above.

41. As detailed above, Defendants' actions are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendants with Trinsic, and as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Trinsic.

42. As detailed above, Defendants' actions in commercial advertising and promotion misrepresent the nature, characteristics, and qualities of Defendants' goods, services, and commercial activities.

43. As detailed above, Defendants have misappropriated Trinsic's AURA mark and the associated goodwill, which were created at Trinsic's expense, and through Trinsic's skill and labor.

44. Because of the above, Trinsic has suffered and will continue to suffer substantial damages, and Defendants have reaped substantial unlawful revenues and profits.

## Third Claim for Relief:
### Violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

45. Trinsic repeats the allegations in paragraphs 1 through 44 above.

46. Trinsic is the exclusive owner of the AURA mark for leasing and management of multi-family housing units and the development and construction of multi-family housing units.

47. Trinsic's AURA mark is widely recognized by the consuming public of the United States.

48. The AURA mark is distinctive and famous under the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

49. Defendants began unlawfully using the AURA mark after Trinsic's AURA mark became famous.

50. Defendants' unlawful use of the AURA mark and their promotion, marking, and selling of services related to "Aura Brewers Hill" is diluting the distinctive quality of Trinsic's AURA mark and decreasing the capacity of Trinsic's AURA mark to identify and distinguish Trinsic's products.

51. Defendants' activities as alleged have diluted and are likely to continue diluting the distinctive qualities of Trinsic's AURA mark in violation of 15 U.S.C. § 1125(c).

52. At all times, Defendants willfully intended to trade on Trinsic's reputation and dilute Trinsic's famous AURA mark.

53. Because of the above, Trinsic has suffered and will continue to suffer substantial damages, and Defendants have reaped substantial unlawful revenues and profits.

### Fourth Claim for Relief:
### Common Law Trademark Infringement

54. Trinsic repeats the allegations contained in paragraphs 1 through 53 above.

55. Trinsic has been using the AURA mark throughout the United States continuously since 2012 in association with the leasing, management, development, and construction of multi-family housing unit services.

56. Without authorization, Defendants began using the AURA mark in connection with similar services after Trinsic began using the AURA mark throughout the country.

57. As detailed above, Defendants' actions are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Defendants with Trinsic, and as to the origin, sponsorship, or approval of Defendants' goods, services, and commercial activities by Trinsic.

58. As detailed above, Defendants' actions in commercial advertising and promotion misrepresent the nature, characteristics, and qualities of Defendants' goods, services, or commercial activities.

59. As detailed above, Defendants have misappropriated Trinsic's AURA mark and the associated goodwill, which were created at Trinsic's expense and through Trinsic's skill and labor.

60. Because of the above, Trinsic has suffered and will continue to suffer substantial damages, and Defendants have reaped substantial unlawful revenues and profits.

### Fifth Claim for Relief:
### Unfair Competition/Misappropriation

61. Trinsic repeats the allegations in paragraphs 1 through 60 above.

62. Defendants' use of Trinsic's AURA mark constitutes "palming off" the sale of their services as if they are those of Trinsic.

63. Defendants have, in bad faith, misappropriated the AURA mark by taking and using the AURA mark, which was created through the expense, skill, and labor of Trinsic.

64. Defendants' use of the AURA mark along with services that have the same core purpose as the services offered by Trinsic places Defendants in direct competition with Trinsic.

65. By these actions, Defendants have gained a financial benefit for themselves and have caused financial loss and damages to Trinsic.

### Sixth Claim for Relief:
### Unjust Enrichment

66. Trinsic repeats the allegations in paragraphs 1 through 65 above.

67. As discussed above, Trinsic and Defendants are competitors in the real estate industry, and Trinsic's AURA mark is well-known in the industry and to the consuming public.

68. Trinsic has expended significant effort, time, and money to create, develop, and protect the AURA mark.

69. Defendants knowingly have used the AURA mark for financial gain and in order to derive other benefits.

70. Defendants have unjustly retained the benefits of the use of Trinsic's AURA mark, the meaning associated with the mark, and the goodwill associated with AURA in the real estate industry.

### Seventh Claim for Relief:
### Cybersquatting

71. Trinsic repeats the allegations in paragraphs 1 through 70 above.

72. Defendants have registered, trafficked in and/or used the domain name aurabrewershill.com (the "Infringing Domain"), which is virtually identical and confusingly similar to the AURA mark.

73. Trinsic's AURA mark was in use, federally registered, and famous before the Infringing Domain was registered by Defendants.

74. Defendants have registered, trafficked in and/or used the Infringing Domain in a manner that has diluted and will continue to dilute the distinctive quality of Trinsic's AURA mark.

75. Defendants registered and are using the Infringing Domain in bad faith with an intent to profit from its unlawful use.

76. Defendants' aforesaid acts constitute willful violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §1125(d).

77. Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Trinsic and the reputation and goodwill of Trinsic, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Trinsic.

78. Trinsic is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are preliminarily and, thereafter, permanently enjoined from committing and continuing to commit such acts.

79. Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, justifying the assessment of exemplary damages and an award of, *inter alia*, Trinsic's lost profits, Defendants' gross profits, and Trinsic's attorneys' fees. Defendants' conduct also warrants a finding that this is an exceptional case.

80. Trinsic is entitled to statutory damages of at least $100,000 for the Infringing Domain.

## PRAYER FOR RELIEF

**WHEREFORE**, Trinsic respectfully requests that this Court enter judgment in its favor, and against Defendants, as follows:

(A) Enjoining Defendants and its officers, directors, agents, employees, successors, assigns and attorneys, and all other persons or entities in active concert or participation with Defendants who receive notice of the injunction by personal service or otherwise, from doing, aiding, causing or abetting the following:

(i) engaging in any further use of marks that are identical or confusingly similar to the AURA mark;

  (ii) directly or indirectly using in commerce an identical or confusingly similar imitation of the AURA mark in connection with the sale, offering for sale, distribution, promotion, or advertisement of any goods and/or services without authorization from Trinsic;

  (iii) using a mark that is identical or confusingly similar to Trinsic's AURA mark in commercial advertising or promotion, and thus misrepresenting the nature, characteristics, qualities, and/or geographic origin of Defendants' products and services;

  (iv) using the Infringing Domain or any other confusingly similar domain names; and

  (v) otherwise engaging in competition unfairly.

(B) Directing the forfeiture and cancellation of the Infringing Domain, or alternatively, transferring the Infringing Domain to Trinsic;

(C) Directing Defendants to file with the Court and serve upon counsel for Trinsic, within thirty (30) days after the entry of the permanent injunction requested in this Complaint, a written report, sworn to under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

(D) Ordering Defendants to account for and pay to Trinsic all profits derived by reason of Defendants' acts alleged in this Complaint pursuant to, *inter alia*, 15 U.S.C. § 1117(a) and Maryland common law;

(E) Awarding Trinsic statutory damages of at least $100,000 for Defendants' violation of the Anti-Cybersquatting Consumer Protection Act;

(F)     Awarding Trinsic all actual damages it has sustained as a result of Defendants' actions including, without limitation, damage to its business, reputation and goodwill, and the loss of sales and profits that it would have made but for Defendants' acts pursuant to 15 U.S.C. § 1117(a) and Maryland common law;

(G)     Finding that this is an "exceptional" case pursuant to 15 U.S.C. § 1117(a);

(H)     Awarding Trinsic injunctive relief and damages, extraordinary damages, fees, and costs pursuant to 15 U.S.C. § 1125(c)(2);

(I)     Awarding Trinsic treble damages pursuant to 15 U.S.C. § 1117(b);

(J)     Awarding Trinsic punitive damages;

(K)     Awarding Trinsic its costs of suit, including reasonable and necessary attorneys' fees and expenses for the prosecution and appeal, if any, of this matter pursuant to 15 U.S.C. § 1117(a) and Md. Ann. Code, Com. Law § 13-408;

(L)     Directing Defendants to immediately destroy any goods or marketing and tangible materials bearing Trinsic's AURA mark in the possession or under the control of Defendants;

(M)     Directing Trinsic to immediately recall from the marketplace all goods and other marketing and tangible materials bearing or displaying the AURA mark, including items within the possession of third-party retailers and distributors;

(N)     Directing Defendants to engage in corrective advertising, at its expense, at a scope commensurate with their advertising and promotion of the infringing mark;

(O)     Awarding Trinsic pre-judgment and post-judgment interest on all sums awarded in the Court's judgment; and

19

(P)   Granting Trinsic such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Trinsic hereby demands a trial by jury on all claims and issues triable by a jury.

Dated:   November 28, 2022

                        Respectfully submitted,

                        STEIN SPERLING BENNETT
                        DE JONG DRISCOLL PC

By:   */s/ Jeffrey M. Schwaber*
Jeffrey M. Schwaber (Bar ID 06095)
jschwaber@steinsperling.com
Direct: 301-838-3210
Fax: 301-354-8110

        */s/ Judith G. Cornwell*
Judith G. Cornwell (Bar ID 20777)
jcornwell@steinsperling.com
Direct:  301-838-3314
Fax: 301-354-8314

1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852

-and-

HAYNES AND BOONE, LLP

Joseph Lawlor (*pro hac vice motion to follow*)
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Direct: 212-659-4985
Fax: 212-884-9564
joseph.lawlor@haynesboone.com

*Attorneys for Plaintiff Trinsic Residential Group LP*

9385491_1